UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX SALCIDO,<br><br>            Plaintiff,<br><br>     v.<br><br>CITY OF MOUNTAIN VIEW, et al.,<br><br>            Defendants. | Case No. 24-cv-08833-NC<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: ECF 76, 77 |

Plaintiff Felix Salcido alleges a claim for malicious prosecution against Defendants Christopher Goff, Ellen Kamei, and City of Mountain View following his arrest on a felony charge after he towed vehicles belonging to Kamei and others from a private lot. Defendants bring two motions to dismiss Plaintiff's second amended complaint, arguing that Plaintiff fails to state a claim, and that Goff and Kamei are entitled to qualified immunity. Because the Court agrees that Plaintiff fails to state a claim for malicious prosecution against Goff and Kamei, or a *Monell* claim against the City, the Court GRANTS the motions to dismiss with leave to amend.

I. **BACKGROUND**

The Court accepts the facts alleged in Plaintiff's second amended complaint as true for the purposes of this motion. Plaintiff Felix Salcido worked as a tow truck driver for Ed's Tow & Cradle, which had a contract to assist with tows of unauthorized vehicles in reserved parking spaces for a company located at 745 Evelyn Avenue, Mountain View,

CA. ECF 75 (SAC) ¶¶ 11–13. On April 12, 2023, Plaintiff towed three unauthorized vehicles from the reserved parking spaces, including the vehicle of Mountain View City Council member and Defendant Ellen Kamei. SAC ¶¶ 5, 15–19. Kamei was angry when she picked up her towed vehicle, and that night called Mountain View Police Department Chief Max Bosel to complain of the tow. SAC ¶¶ 22–34. Chief Bosel directed Defendant Sgt. Christopher Goff to investigate Plaintiff and the towing company for unlawful towing. SAC ¶¶ 4, 43–44, 47. Goff conducted an investigation and prepared a police report. SAC ¶¶ 45, 53–55, 69. The owner of one of the towed vehicles, a Tesla, ultimately pressed charges against Plaintiff. SAC ¶ 68. A records specialist submitted Goff's police report as part of an application for an arrest warrant for Plaintiff. SAC ¶¶ 76–79. A district attorney charged Plaintiff with a felony under California law for the taking or unauthorized use of a vehicle with intent to temporarily deprive the owner of possession, resulting in the unreasonable seizure of Plaintiff's person, "assault, unlawful arrest, and excessive force." SAC ¶¶ 8, 81–83. The charge against Plaintiff was later dismissed. SAC ¶¶ 59, 85. The City at all relevant times employed Goff and Kamei. SAC ¶¶ 4–5.

Plaintiff filed a complaint in December 2024, followed by a first amended complaint. ECF 6, 19. The Court granted Defendants' motions to dismiss the first amended complaint with leave to amend. ECF 68. Plaintiff filed a second amended complaint. SAC. Defendants City and Goff, ECF 76, and Kamei, ECF 77, filed motions to dismiss. Plaintiff filed oppositions to both motions. ECF 78, 79. Defendants replied. ECF 81, 82. All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). ECF 11, 13.

II.     **LEGAL STANDARD**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When

reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III.   DISCUSSION

Plaintiff's second amended complaint brings one 42 U.S.C. § 1983 claim against the City and against Goff and Kamei in their individual and official capacities. SAC 1, 15. Plaintiff specifically alleges that Goff and Kamei "engage[d] in malicious prosecution against [him] to retaliate against him for towing Defendant Kamei's vehicle," causing him "to be detained, arrested, and criminally charged in violation of his" Fourth Amendment rights.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Malicious prosecution with the intent to deprive a person of equal protection of the law or otherwise to subject a person to a denial of constitutional rights is cognizable under § 1983." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004) (citation omitted). To bring a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff "must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U.S. 36, 43 (2022)). The plaintiff also must demonstrate "that he obtained a *favorable termination* of

3

the underlying criminal prosecution." *Thompson*, 596 U.S. at 39 (emphasis in original).

Malicious prosecution claims may be brought against "persons who have wrongfully caused the charges to be filed" through, for example, "fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Awabdy*, 368 F.3d at 1066–67. "[G]overnment investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit." *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). To prevail on a claim of judicial deception, a plaintiff "must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (citations omitted).

The Court finds that Plaintiff fails to state a claim for malicious prosecution against either Goff or Kamei, and thus also fails to state a claim against the City. The Court does not reach the parties' arguments on qualified immunity.

### A. Plaintiff Fails to State a Claim for Malicious Prosecution Against Goff

Plaintiff alleges the "skewed" police report Goff prepared for the warrant application "contained false and or [*sic*] critically important omitted information" that "was material to the finding of probable cause." SAC ¶¶ 58, 98, 99. Plaintiff does not specifically allege any false information by Goff but does allege Goff "purposely omitted the fact that the tows were legal" under California law and that "Goff knew there was no probable cause to arrest Mr. Salcido." SAC ¶ 57. Goff argues, in part, that Plaintiff fails to state a malicious prosecution claim against him because he fails to establish that any alleged omissions were material to the finding of probable cause. ECF 76 at 6. The Court agrees.

Plaintiff's allegations that Goff knew the tows were legal are conclusory and unsupported by his factual allegations. In particular, Plaintiff alleges Goff omitted from his report that he knew, under California law, "vehicles could be towed from private property if they were parked in a manner blocking the entrance or exit of a property." SAC ¶ 56. Plaintiff also alleges Goff omitted that he: spoke with the manager of the

4

reserved spaces "who confirmed it was an ongoing issue for unauthorized vehicles to continually park in her company's spaces," SAC ¶ 53; saw "clearly marked signs indicating that spaces were reserved" and warning unauthorized vehicles would be towed, SAC ¶ 54; and saw the entrances of the property, which included reserved parking stalls, SAC ¶ 55. But Plaintiff fails to put the pieces together; he alleges the cars towed blocked an entrance or exit, but not that Goff knew that was the case yet purposely omitted that information from his report. *See* SAC ¶ 20. Therefore, Plaintiff fails to explain why the inclusion of any of these omitted facts in Goff's police report would have been material to or precluded a finding of probable cause.

Plaintiff also alleges Goff omitted two other material facts from his report: that Kamei had complained about and initiated the investigation of Plaintiff, SAC ¶¶ 45, 49, 52; and that Goff contacted owners of other towed vehicles to "claim that their vehicles had allegedly been subjected to an illegal tow," or at least "that there was a 'grey area' regarding the legality of the tows," SAC ¶¶ 63–67. As to the first alleged omission, Plaintiff's subsequent allegations that only Chief Bosel knew Kamei complained about the tows undermines the allegations that Goff purposely omitted Kamei's involvement from his report. *See* SAC ¶¶ 50–51. And, regardless, Plaintiff does not adequately explain how including Kamei's involvement in his report would have materially changed the finding of probable cause. *See* SAC ¶¶ 50, 52 (alleging only that Kamei "would be spared from any allegations of political corruption or misuse of political influence"). Likewise, Plaintiff fails to explain how the second alleged omission—that Goff contacted other vehicle owners to suggest or tell them the tows were illegal—would have been material to probable cause if the circumstances of the tow for which Plaintiff was charged independently constituted probable cause. Although these allegations may suggest Goff acted "deliberately or recklessly" or in retaliation, a claim of judicial deception also requires materiality, which Plaintiff fails to establish. *See Ewing*, 588 F.3d at 1223.

Ultimately, Goff's report is not before the Court so it cannot, without sufficient allegations and explanation from Plaintiff, conclude that any of the alleged omissions were

5

material to the finding of probable cause.  Plaintiff's second amended complaint fails to state a claim for malicious prosecution against Goff.

### B. Plaintiff Fails to State a Claim for Malicious Prosecution Against Kamei

Kamei argues, in part, that Plaintiff fails to allege sufficient facts showing she was acting in her "official capacity" or that the charge against Plaintiff lacked probable cause.

As a preliminary matter, Kamei's motion at times conflates whether Plaintiff is suing Kamei in her individual and/or official capacity with whether Kamei acted under color of state law.  *See* ECF 77 at 7–9, 12.  Whether a government official is sued in their official or individual capacity determines the immunity defenses available to them and who—the official or the government—is liable for monetary damages.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses. . . . [O]fficials sued in their personal capacities . . . may assert personal immunity defenses."); *Mktg. Info. Masters, Inc. v. Bd. of Tr. of Cal. State Univ. Sys.*, 552 F. Supp. 2d 1088, 1095 (S.D. Cal. 2008) ("An individual capacity suit against a government official is one that directly attaches that individual's assets and is one that will not lead to monetary liability of the state.").  In contrast, whether a government official acted under color of state law is an element of § 1983 claim.  *West*, 487 U.S. at 48.

The second amended complaint states that Plaintiff is suing Goff and Kamei in their individual and official capacities.  SAC ¶¶ 4–5.  "When determining whether an official has been sued in his official or individual capacity, we examine the capacity in which the officer is sued, not the capacity in which the officer inflicts the alleged injury."  *Magassa v. Mayorkas*, 52 F.4th 1156, 1162 (9th Cir. 2022).  The Court therefore treats the second amended complaint as suing Goff and Kamei in their individual and official capacities.

As to whether Plaintiff plausibly alleges Kamei acted under color of state law to state a § 1983 claim, "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. [citation omitted].  Thus, generally, a public employee acts under color of state law while acting in

6

his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 49–50. "The acts, therefore, must be performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties." *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000). Plaintiff alleges Kamei "reported the tow concern as part of her alleged duties as a councilmember," and contacted Chief Bosel through channels available to her as a council member and "as part of trained protocol as a city council member." SAC ¶¶ 29–31, 38. This is sufficient to allege Kamei was acting in the scope of her official duties and, therefore, under color of state law. *See McDade*, 223 F.3d at 1140 (finding official acted under color of state law where she had "access" through her position and acted "under the pretense of performing her official duties").

Nonetheless, Plaintiff fails to plausibly allege a malicious prosecution claim against Kamei. Plaintiff alleges that Kamei "initiated and directed, and or [*sic*] caused an investigation" into Plaintiff in retaliation for the towing of her car by reporting false information to Chief Bosel. SAC ¶¶ 33, 34, 41–42, 98. But to state a claim for judicial deception or malicious prosecution, Plaintiff must still establish that he was charged without probable cause. *See Chiaverini*, 602 U.S. at 558; *Ewing*, 588 F.3d at 1223. The second amended complaint, at base, alleges that Kamei's report to Chief Bosel led to Goff's investigation and police report. Therefore, Plaintiff's claim for malicious prosecution against Kamei rests on, and fails for the same reason as, his claim for malicious prosecution against Goff. Plaintiff fails to plausibly allege he was charged without probable cause, or that Kamei's alleged false statements to Chief Bosel were ultimately material to the finding of probable cause.

### C. Plaintiff Fails to State a *Monell* Claim Against City of Mountain View

A local government may be held liable under § 1983 for constitutional injuries inflicted by one of its employees or agents under one of four theories: (1) an express municipal policy; (2) a widespread practice that constitutes a custom or usage; (3) the decision of a person with final policymaking authority; or (4) inadequate training. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *City of St. Louis v. Praprotnik*,

485 U.S. 112, 127 (1988); *City of Canton v. Harris*, 489 U.S. 378 (1989).  But *Monell* claims are contingent on an underlying constitutional violation by a municipal officer.  *Lockett v. City of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020).  Because Plaintiff has failed to state a § 1983 claim for malicious prosecution against Goff or Kamei, Plaintiff necessarily fails to state a § 1983 claim against the City.

## IV. CONCLUSION

The Court GRANTS Defendants' motions to dismiss the second amended complaint.  Because it is not clear amendment would be futile, the second amended complaint is dismissed with leave to amend.  *See Lopez*, 203 F.3d at 1127.  Plaintiff must file a third amended complaint, or a statement indicating he does not intend to amend, by October 6, 2025.

**IT IS SO ORDERED.**

Dated: September 22, 2025

NATHANAEL M. COUSINS
United States Magistrate Judge